UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE KOBER, Individually and Derivatively on Behalf of HTV Industries, Inc., 400 E. 56th St., Apt. 20G New York, NY 10022 | ) ) ) ) ) | CASE NO. |
| Plaintiff. | ) ) | |
| v. | ) ) | **VERIFIED COMPLAINT FOR INJUNCTION AND OTHER RELIEF** |
| DANIEL HARRINGTON 1010 West Hill Drive Gates Mills, Ohio 44040 | ) ) ) ) | |
| Defendant | ) ) ) | |
| and | ) ) | |
| HTV INDUSTRIES, INC. C/O ITS REGISTERED AGENT CT CORPORATION SYSTEM 4400 Easton Commons Way Suite 125 Columbus, Ohio 43219 | ) ) ) ) ) ) ) | |
| Nominal Defendant. | ) ) | |

Plaintiff Jane Kober ("Kober"), individually and derivatively on behalf of Nominal Defendant HTV Industries, Inc., as and for her complaint against Defendant Daniel Harrington, states and alleges as follows:

1.      Plaintiff Jane Kober is a minority stockholder and one of two directors of a close corporation known as HTV Industries, Inc. ("HTV").  As such, she anticipated that she would be treated with utmost good faith and loyalty by the majority and controlling stockholder of HTV.  Instead, Defendant Daniel Harrington ("Harrington"), the president of HTV, its only

other director, and its majority and controlling stockholder, through blatant self-dealing and fraud, essentially picked Kober's pocket by intentionally concealing material information from Kober in order to induce her to agree to amend HTV's deferred compensation plans to fund Harrington's divorce, all to Harrington's advantage and at the expense of Kober and the other HTV stockholders. Kober would not have approved the resolution and amendments presented to her as an HTV Director to enable these transactions had she been provided with complete and appropriate information as to their impact on herself and the other minority stockholders, because, as she now knows, the payments to Harrington's former spouse under the Plan have resulted in substantial losses to HTV, and have deprived Kober and the other minority stockholders of HTV of corporate profits and tax distributions for 2016 and 2017.

2.     Plaintiff Kober also suffered unique injuries as a result of Harrington's malfeasance because she is the only non-employee minority stockholder of HTV other than Harrington's children and former wife.

3.     Kober now seeks to hold Harrington responsible for the damages resulting from his fraud and breach of fiduciary duty.

**The Parties**

4.     Plaintiff Jane Kober is, and at all pertinent times has been, a director and minority stockholder of HTV. Kober purchased her HTV stock in two tranches, beginning in approximately 1998. In the past, Kober, an attorney, also represented HTV in various matters from time to time.

5.     Nominal Defendant HTV was incorporated in 1982 under the laws of the State of Delaware and is headquartered in Pepper Pike, Ohio. HTV is a corporation governed by Subchapter S of Chapter 1 of Subtitle A of the Internal Revenue Code and is a closely held,

private holding company with diversified business interests that include or have included equity ownership interests in, among others, biotechnology, telecommunications, manufacturing, and banking entities, and holdings of public company stock.

6.     Defendant Daniel Harrington is, and at all pertinent times has been, the president, chief executive officer, and a director of HTV.  He, together with his then-wife and children, became HTV's majority stockholder in September 2013 and he now owns or controls approximately 90% of the stock of HTV.

### Jurisdiction and Venue

7.     Plaintiff Kober is a citizen of New York.  Defendant Harrington is a citizen of Ohio, and Nominal Defendant HTV, a Delaware corporation, has its principal place of business in Ohio.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a), and personal jurisdiction over all defendants because they reside in this district.  Venue is proper pursuant to 28 U.S.C. § 1391(a) because, among other things, all defendants reside in this district.

### Background

9.     Nominal Defendant HTV Industries, Inc., a Delaware corporation, was organized in 1982 by Tinkham Veale II and his wife Harriet (hence the name "HTV" for Harriet and Tinkham Veale), to serve as a holding company with varied investments for them, their children and their grandchildren.  In time, all of their children for themselves and their children asked to have their stock in HTV redeemed so that they could reinvest the funds elsewhere.   Mr. Veale acquiesced, and that left him, at age 84, without others in his company.  (Mrs. Veale was

not experienced in business.)  In addition, Mr. Veale's son-in-law, who had been President of HTV, left the company to run an HTV spinoff company.

10.     Mr. Veale was a leading industrialist who formed his first company at a very young age, with several others, including his closest college friend, John Vaughan, a brother, and a brother-in-law.  Subsequent companies, including public corporations and private investments were also organized jointly with friends (his "business partners," as he called them) and relatives, who often had executive officer positions.

11.     Thus, left alone at age 84 with HTV, Mr. Veale did what he had always done:  he assembled a group of colleagues and invited them to invest in HTV and join its board of directors.  The investors were Vaughn, two retired senior officers from the public company Alco Standard that Mr. Veale founded (an executive financial officer and an executive legal officer), and Plaintiff Kober.  At about the same time, he promoted Defendant Harrington to President of HTV, from the job he had at the time in a minor portfolio company of HTV.  Defendant Harrington also invested in HTV and joined the board.  Key employees were also invited to invest and did so.

12.     At all times from 1998 on, all board members were stockholders who acted by consensus and often referred to one another as partners.  (Messrs. Veale and Harrington made most decisions, as the Executive Committee).  By attrition through death and retirement, there were three directors after Mr. Veale's death:  Plaintiff Kober and two employee-directors, including Defendant Harrington.  Since the retirement of the third director in 2015, only Defendant Harrington and Plaintiff Kober remained as company directors.

13.     Defendant Harrington continued to call quarterly meetings of the board, as had always been the case, until the circumstances described below arose.

**Facts**

14.     HTV has two deferred compensation plans, a Directors' Deferred Compensation Plan, and an Officer and Key Employee Deferred Compensation Plan (collectively, the "Deferred Compensation Plans" or "Plans").  As an officer and director of HTV, Defendant Harrington is a beneficiary of one or both Deferred Compensation Plans.  In fact, tens of millions of dollars in deferred compensation are to be paid to him in the form of stock, so that his equity ownership can be considered much greater than the percentage noted above.

15.     Prior to the events described here, both Deferred Compensation Plans, subject to certain exceptions, permitted distributions only in company stock and only in a single distribution upon termination of employment or board service, whether by resignation, involuntary termination or death.

16.     In or about October of 2015, Harrington was involved in divorce proceedings in the Cuyahoga County Court of Common Pleas, Domestic Relations Division ("Domestic Relations Court"), with his spouse, Sherri Harrington.  Harrington needed a substantial amount of cash to fund the divorce agreement.

17.     Defendant Harrington reached an agreement with Sherri Harrington to finalize their divorce that required him to pay her an agreed amount in installments over a period of seven (7) years.  To fund this agreement, Harrington needed to have the Deferred Compensation Plans amended to permit premature installment distributions in the form of cash to Sherri Harrington.

18.     Since HTV has only two directors, Harrington needed the only other director – Plaintiff Kober – to approve a resolution to amend the Plans, both because he alone did

not constitute a majority of the board and because he was in a conflict of interest situation. Kober first leaned about the pendency of the divorce proceeding and Harrington's need for cash from the company approximately one week before his scheduled final divorce mediation date. By then Harrington had had months to obtain tax advice for himself and the company, but did not share any of the tax analysis (or the need for it) with Kober.

19.     As an officer and the controlling stockholder of HTV, Defendant Harrington had a fiduciary duty to supply Plaintiff Kober, in her positions as director and minority stockholder, with full and complete information as to the impact of any plan amendments on her, other minority stockholders of HTV, and HTV itself.  Harrington did not provide Plaintiff Kober with such full, complete, and truthful information regarding the proposed amendments and their impact, nor the impact of the subsequent distributions in cash on HTV, nor his own resulting tax benefit.  Therefore any approval that Kober may have provided was null and void *ab initio*.

20.     Between May and October of 2015, Harrington had caused HTV to sell off or liquidate certain HTV investments for the purpose of funding his upcoming divorce settlement.  However, he misrepresented the purpose of such sales and liquidations to Kober and/or failed to explain to Kober his personal interest in HTV's accumulation of cash during this period in order to fraudulently induce her to agree to the transactions.

21.     Harrington obtained an order of the Domestic Relations Court ("DRO") for HTV to distribute funds from the Deferred Compensation Plans to Sherri Harrington in the form of installment payments.  The amendments to the Deferred Compensation Plans were prepared by HTV's specialized counsel for such matters.  Kober agreed to the amendments, wishing to support Defendant Harrington as she had done for nearly twenty years.

22.     HTV's first distribution to Sherri Harrington in late 2015 was made in cash rather than in company stock.  HTV recorded the payment as compensation expense, which resulted in ordinary business loss to HTV for fiscal year 2015.  Harrington, for himself and the children's shares he controls, and the other employee stockholders of HTV were able to use their shares of any loss resulting from the distribution on their income tax returns for 2015 and later years.  However, pursuant to the "passive loss rules" of the Internal Revenue Code, Plaintiff Kober, as a non-employee passive investor in HTV, was not able to do so.  Harrington had a fiduciary obligation to explain this individualized impact of the transaction to Plaintiff Kober before requesting her approval, but failed to do so.

23.     In 2016 and 2017, HTV made two additional cash payments from the Plans to Sherri Harrington, and, unless enjoined by this Court, will continue to make similar payments annually through 2021.

24.     Even if the improperly procured amendments to the Deferred Compensation Plans had been effective, they did not permit the Plans to make distributions in cash.  Thus, Harrington's improper actions caused HTV to make unauthorized distributions to Sherri Harrington from the Plans, in violation of the Employee Retirement Income Security Act ("ERISA").

25.     By causing HTV's Deferred Compensation Plans to make distributions to his former spouse in violation of the terms of the Plans and of ERISA requirements, Harrington breached his fiduciary duties to HTV and its stockholders, including Plaintiff Kober.

26.     As a result of the distributions from the Deferred Compensation Plans being made to Sherri Harrington rather than to Harrington himself, Harrington obtained for himself a significant, unique tax benefit enabling him to pay his obligation to Sherri Harrington

in pre-tax dollars that also he failed to disclose to Kober before soliciting her consent to amend the Plans.

27.     HTV's procedure and course of dealing since in or about 2001 when it converted from C-Corp to S-Corp status has been for its stockholders to forego distributions of profits and keep the funds in the company to enable it to grow.  Because they were liable for taxes on such phantom income, however, HTV always made quarterly distributions to its stockholders to cover their tax payments.  At all times, all directors were stockholders.  Over that lengthy period of time, up until 2016, there was never an adjustment made in a subsequent year for over-distribution to a stockholder of such payments in the prior year, despite the fact that HTV had experienced operating losses in other years subsequent to prior quarterly tax distributions.  In addition, until 2016, the tax distributions to stockholders relating to the company's portfolio income had never been reduced by a deemed tax benefit from operating losses.

28.     In 2016 and 2017 -- contrary to its historic process and course of dealing since at least 2001 as consistently ratified by its Board of Directors -- HTV did not make quarterly tax distributions to its stockholders.  Instead, Harrington caused HTV to notify its stockholders that overpayments in 2015 would cover their 2016 taxes and that no additional distributions would be made.  Stockholders received the same notice for 2017.  These notices were false, since Plaintiff Kober, a passive investor, was not entitled to use any losses carried forward from 2015 on her 2016 and 2017 income tax returns.

29.     After the aforesaid notice to HTV stockholders was delivered to Kober, Harrington personally and affirmatively misrepresented to Kober that she would not need distributions in 2016 to cover her taxes.  It was not until 2017 when she was making her personal

tax payments for 2016 and the first quarter of 2017 that Kober discovered that this representation was false and fraudulent.

30.    Had Defendant Harrington complied with his fiduciary duties and fully disclosed the effects of the proposed Deferred Compensation Plan amendments and the proposed cash distributions to Sherri Harrington to Plaintiff Kober, she would not have acquiesced or voted to approve the amendments.  As a result of Defendant Harrington's failures to disclose as detailed herein, Ms. Kober has suffered damages (in an amount in excess of $688,000 for 2016 alone), plus interest from the dates when regular quarterly distributions should have been made in 2016 and 2017.

31.    Since Kober became aware of Harrington's defalcations and their impact on her and on HTV earlier this year, other irregularities have come to light.  Principal among these is the apparent transfer of HTV stock from the Harrington Family Trust to what appears to be a new entity, the Sherri Harrington Trust.  Absent board approval, such unauthorized transfer of stock is a violation of the stockholder agreements that all HTV stockholders, including Harrington, entered into when they purchased their shares.

32.    Contrary to HTV's longstanding practice of holding four meetings per year of its Board of Directors, Defendant Harrington scheduled only three Board meetings in 2016 and no Board meetings in 2017.

### COUNT I
### (Direct Claim for Breach of Fiduciary Duty)

33.    Kober realleges and incorporates by reference, as if re-written here, the allegations in ¶¶ 1-24 of the Complaint.

34.    As the majority and controlling stockholder of HTV, Harrington owes Kober a fiduciary duty of utmost good faith and loyalty, and of full disclosure.  As an officer and

employee of HTV, Harrington owes HTV and Kober as its director a fiduciary duty to give her full and complete information concerning the impact of any proposed board action before seeking her acquiescence.

35.     Harrington breached his fiduciary duties to Kober by failing to act in good faith and scheming to secure her agreement to Deferred Compensation Plan amendments in favor of Harrington as evidenced by, among other things: failing to disclose to Kober the substantial impact the premature payment of deferred compensation in the form of cash would have on the minority stockholders, and particularly on Kober; fraudulently failing to disclose material information to Kober, and concealing the substantial adverse tax impact she would suffer from the proposed premature distributions; and failing to disclose his own conflict of interest in seeking a personal tax benefit from the distributions.

36.     Harrington's actions as described herein in breach of his fiduciary duty were done knowingly, willfully, maliciously, and with a reckless disregard for Kober's rights.

37.     As a direct and proximate result of Harrington's breach of fiduciary duty, Kober has been damaged in an amount to be proven at trial but which is believed to be in excess of $700,000.

38.     Unless this Court enjoins Harrington from causing HTV to make future payments from the Plans to Sherri Harrington, Kober and HTV's other minority stockholders will continue to suffer irreparable harm as described herein.

## COUNT II
### (Direct Claim for Fraud)

39.     Kober realleges and incorporates by reference, as if re-written here, the allegations in ¶¶ 1-30 of the Complaint.

40.     As the controlling and majority stockholder of HTV, Harrington owed Kober a fiduciary duty of utmost good faith and loyalty, and of full disclosure.  Harrington had a duty to disclose to Kober all of the material information needed to assess the impact of any Deferred Compensation Plan amendments and/or premature distributions in cash on her and the other minority stockholders, and to fully disclose his own conflict of interest, prior to presenting the amendments to her as a director for consideration.

41.     Harrington's concealment from Kober of the material information needed to assess the impact of his proposed actions and necessary to make his statements to her about the facts discussed herein not misleading, prior to presenting such actions to her as a director for approval, was material to Kober's decision to agree to those actions.

42.     Kober justifiably relied on Harrington's silence regarding the deferred compensation distributions in making her decision to sign off on the Plan amendments, and would not have done so had she been provided with full and complete information.

43.     As a direct and proximate result of Harrington's fraudulent concealment and Kober's justifiable reliance thereon, Kober has been damaged in an amount to be proven at trial but which is believed to be in excess of $700,000.

## COUNT III
### (Derivative Claim on Behalf of HTV Industries, Inc.)

44.     Kober realleges and incorporates by reference, as if rewritten here, the allegations in ¶¶ 1-35 of the Complaint.

45.     Plaintiff Kober alleges the following stockholder derivative claims against Harrington on behalf of HTV.

**Derivative and Demand Futility Allegations**

46.     Plaintiff Kober brings this claim derivatively in the right and for the benefit of HTV to redress injuries suffered, and to be suffered by HTV as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment by Defendant Harrington.  HTV is named as a Nominal Defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

47.     Plaintiff Kober will adequately and fairly represent the interests of HTV in enforcing and prosecuting its rights.

48.     Kober was a stockholder of HTV at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current HTV stockholder.

49.     The current Board of Directors of HTV consists of Plaintiff Kober and Defendant Harrington.  Kober has not made any demand on the present Board to institute this action because such a demand would be futile, wasteful, and a useless act, as set forth herein.

50.     As alleged herein, Defendant Harrington breached his fiduciary duties of loyalty and full disclosure in connection with securing Plaintiff Kober's approval to amend the Deferred Compensation Plans, in paying and in causing HTV to make improper payments to his former spouse in connection with his divorce, and in making unauthorized transfers of HTV stock to the Sherri Harrington Trust.

51.     Defendant Harrington authorized and/or permitted the improper and illegal payments to Sherri Harrington, and is the principal beneficiary of the wrongdoing alleged herein, and thus could not fairly prosecute such a suit even if such suit were instituted by HTV.

52.     HTV and its minority stockholders have been and will continue to be exposed to significant losses due to the wrongdoing complained of herein; yet, Defendant Harrington has not filed any lawsuits against himself for that wrongful conduct or attempted to recover for HTV any part of the damages HTV suffered and will suffer thereby.  Moreover, despite Defendant Harrington having knowledge of the claims and causes of actions against him raised herein, he has failed and refused to cause HTV to seek to recover for any of the wrongdoing herein alleged.

53.     Plaintiff Kober has not made any demand on the other stockholders of HTV to institute this action since such demand would be a futile and useless act because Defendant Harrington owns and controls the vast majority of the shares of HTV.

### Claims on Behalf of HTV

54.     As a direct and proximate result of Defendant Harrington's breaches of his fiduciary duties, HTV has sustained significant damages as alleged herein.  As a result of the misconduct alleged, Harrington is liable to the Company.

55.     Defendant Harrington caused HTV to waste its assets by improperly selling off or liquidating its assets for his personal benefit and making improper and unlawful distributions from the Deferred Compensation Plans in the form of cash payments to his former spouse, resulting in tax and other benefits to Defendant Harrington, to the detriment of HTV.

56.     As a result of this waste of corporate assets, Defendant Harrington is liable to HTV.

57.     By causing the Plans to make unlawful distributions to his former spouse, Harrington has caused HTV to violate its fiduciary duties to the Plan participants, putting HTV at risk for penalties and expenses resulting from ERISA violations.

58.     By transferring restricted HTV stock to the Sherri Harrington Trust in violation of the HTV stockholder agreements without board authorizations, Harrington has unilaterally caused HTV to abrogate its rights under those agreements.

59.     By his wrongful acts and omissions, Defendant Harrington was unjustly enriched at the expense of and to the detriment of HTV.

60.     Plaintiff Kober, as a stockholder and representative of HTV, seeks restitution from Defendant Harrington and seeks an order or this Court disgorging all profits, benefits, and other compensation obtained by Defendant Harrington as a result of his wrongful conduct and fiduciary breaches, as shall be proved at trial.

61.     Unless this Court enjoins Harrington from causing HTV to make future payments from the Plans to Sherri Harrington, HTV will continue to suffer irreparable harm as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kober demands:

1.      Injunctive relief enjoining Harrington from causing HTV to make further payments to Sherri Harrington;

2.      Declaratory judgment holding that the HTV board resolution purporting to amend its Deferred Compensation Plans was void *ab initio*;

3.      Declaratory judgment holding that the purported transfer of restricted HTV stock to the Sherri Harrington Trust without board authorization was void *ab initio*.

4.      Judgment against Defendant Harrington on Counts I and II in favor of Plaintiff Kober in an amount to be proven at trial but which is believed to be in excess of $700,000;

5.      Judgment against Defendant Harrington and in favor of Plaintiff Kober for punitive damages and pre- and post-judgment interest in amounts to be determined at trial;

6.      Judgment against Defendant Harrington awarding to HTV restitution and ordering disgorgement of all profits, benefits, and other compensation obtained by him with respect to the actions described herein, and sufficient to restore the Plans to their former status before the unlawful distributions to his former spouse;

7.      Judgment ordering Defendant Harrington to reimburse Plaintiff Kober's costs of litigation and her actual attorney fees; and

8.      Such other and further relief in Plaintiff Kober's favor as this Court may

deem equitable and just.

Respectfully submitted,


/s/ Frances Floriano Goins
Frances Floriano Goins  (0018631)
Nicholas B. Wille (0084604)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
Telephone: (216) 583-7000
Facsimile:  (216) 583-7001
fgoins@ulmer.com

Attorneys for Plaintiff
Jane Kober

## <u>VERIFICATION</u>

I, Jane Kober, do hereby declare as follows:

I am the plaintiff in the within entitled action.  I have read the Verified Complaint.  Based upon discussions with and reliance upon my counsel, and facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted.

Dated: _Nov. 27, 2017_      _____
                                Jane Kober