UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE KOBER, | ) | CASE No. : 1:17 CV 2491 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| Vs. | ) | |
| | ) | MEMORANDUM OPINION |
| DANIEL HARRINGTON | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Defendant, Daniel Harrington's Motion to Dismiss Plaintiff Jane Kober's Corrected First Amended Complaint. (ECF #12). Plaintiff, Jane Kober, filed a Memorandum in Opposition, Defendant filed a Reply in Support of his motion, and Plaintiff filed a sur-reply. (ECF #14, 16, 18). The matter is now fully briefed and ready for consideration.

1

# FACTUAL AND PROCEDURAL OVERVIEW[1]

Plaintiff, Ms. Kober, individually and derivatively on behalf of HTV Industries, Inc. shareholders, filed a verified Complaint for Injunction and Other Relief against Daniel Harrington and HTV Industries, Inc. on November 28, 2017. (ECF #1). The Defendants moved to dismiss the derivative claims for lack of standing, and filed a separate motion to dismiss the remaining claims for failure to state a claim. (ECF #5, 6). In response, Plaintiff filed an Amended Complaint, and then a Corrected First Amended Complaint. (ECF #9, 10). The Amended Complaint eliminated the derivative claims and dropped HTV Industries, Inc. from the lawsuit. Defendant, Mr. Harrington, filed a motion to dismiss the Corrected First Amended Complaint ("Complaint")[2] for failure to state a claim upon which relief can be granted. (ECF #12).

The Complaint alleges that Ms. Kober, was a minority shareholder and one of two directors of HTV Industries, Inc. ("HTV"), a closely held corporation formed under Delaware law. Defendant, Mr. Harrington, was the other director as well as a controlling stockholder, president, and chief executive officer of HTV. HTV has two deferred compensation plans, a Directors' Deferred Compensation Plan, and an Officer and Key Employee Deferred Compensation Plan. Although not alleged in the Complaint, Plaintiff, in her sur-reply, indicates that she and the defendant were the only two plan participants. (ECF #18, fn. 2). Both plans, subject to certain exceptions, permit distributions only in stock, and prior to the amendments discussed below, only in a single distribution upon termination of employment or board service.

In October of 2015, Mr. Harrington was involved in divorce proceedings and needed a substantial amount of cash or other consideration to fund a divorce settlement. The settlement agreement approved by the Domestic Relations Court required Mr. Harrington to pay his ex-wife in seven installment payments using distributions from HTV's deferred compensation plans. In

---

[1] The facts as stated in this Memorandum and Order are taken from the Amended Complaint and should not be construed as findings of this Court. In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.
[2] For the sake of brevity, for the remainder of this opinion, the Court will refer to the Corrected First Amended Complaint simply as "the Complaint."

2

order to make these payments, the Defendant needed to amend the deferred compensation plans to permit early installment distributions prior to termination of employment. In order to amend the plans, he needed the vote of Plaintiff, the second board member. The Plaintiff was aware of the Defendant's divorce proceedings and his need for cash prior to the vote. She voted along with the Defendant to amend the plan documents to allow distributions to fulfill court orders, "wishing to support Defendant." (ECF #9, ¶ 24). According to the Complaint, the amendments that Ms. Kober voted on did not alter the fact that distributions from the Plans could only be made in stock. (ECF # 9, ¶ 27). Defendant argues that the amendment language permitted cash distributions if they were ordered by the divorce court, but at this stage of the proceedings the Court is bound to accept the factual allegations in the Complaint as true, and Ms. Kober is bound by the assertions in her pleadings. Therefore, the Court will accept for purposes of this motion that the Plan Amendments did not alter the requirement that distributions from the Plans be made in stock and not in cash.

HTV's first distribution to Mr. Harrington's ex-wife was made in cash rather than in stock. Because the Complaint alleges that amendments approved by Plaintiff did not permit the plans to make distributions in cash, she contends that the distributions were unauthorized under the plan documents and violated the Employee Retirement Income Security Act ("ERISA"). She did not, however, bring any claim for ERISA violations in her Complaint.

The cash payments made to Mr. Harrington's ex-wife were recorded by HTV as a compensation expense, resulting in ordinary business losses to the company. Defendant and his family were able to use their share of this loss on their income tax returns. Plaintiff, as a non-employee, passive investor, however, was prohibited by the "passive loss rules" of the Internal Revenue Code from using the loss on her taxes.

In 2016, after the deferred compensation plans had been amended and the first cash distribution had been made to Mr. Harrington's ex-wife, Mr. Harrington made a separate and distinct decision to direct the discontinuation of HTV's longstanding practice of making quarterly tax distributions, in lieu of ordinary distributions of profits, to cover shareholder's tax liabilities. At all times since 2001, HTV's decisions relating to stockholder distributions were

3

made at a management level, at the direction of the Defendant, without any board action or involvement. After the decision was announced to stockholders, the Defendant allegedly told Plaintiff that she would not need a tax distribution in 2016 to cover her taxes. She found this information to be incorrect.[3]

The Complaint alleges that the Defendant intended to make cash distributions to his ex-wife, count them as losses, and eliminate the tax distributions at the time he sought Plaintiff's approval of the Plan Amendments. It also alleges that he knew this course of action would provide tax benefits to him and his family. Based on these allegations, the Complaint asserts claims for breach of fiduciary duty allegedly owed Ms. Kober both as a minority shareholder and as a director, as well as for fraud. Ms. Kober seeks a declaratory judgment holding that the "HTV board resolution purporting to amend its Deferred Compensation Plans" and the "purported transfer of restricted HTV stock to the Sherri Herrington Trust without board authorization" were void *ab initio*. She also seeks judgment against Mr. Harrington in an amount in excess of $700,000.00, plus attorney fees, punitive damages and pre- and post-judgment interest. (ECF #9).

## STANDARD

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). The Sixth Circuit has also held that a reviewing court may consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). In evaluating a motion for dismissal under Rule 12(b)(6), the district court must

---

[3] The Complaint does not affirmatively assert that Mr. Harrington knew or should have known that Ms. Kober would need a tax distribution to cover her 2016 taxes because of the "passive investor" provisions of the tax code. Nor does it allege any facts that would support a finding of reasonable reliance on this statement.

4

"consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.,* 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir. 1980)).

Though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.,* 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## ANALYSIS

The Complaint as well as the Plaintiff's brief in opposition to the Motion to Dismiss, and her sur-reply allege that Mr. Harrington breached his fiduciary duty to Ms. Kober, as a minority shareholder, by failing to provide her with full disclosure of his intent to issue plan distributions in cash and to forego tax distributions in future years, before she voted on the Plan Amendments. Aside from the fact that these allegedly intended future actions were not authorized by the Plan Amendments, nor necessarily dependent on them, the non-disclosed actions should not have been relevant to Ms. Kober's decision to adopt the Plan Amendments, because according to her own allegations, the Plan Amendments did not facilitate those decisions.[4] Plaintiff tries to conflate three separate decisions, with separate decision making procedures and corporate obligations, into a single transaction for purposes of determining the applicable disclosure

---

[4] The Complaint states that the Plan Amendments did not allow cash distributions from the plans. It also states that the cash distributions, not the amendments, created the tax situation that led Mr. Harrington to direct the elimination of tax distributions. (ECF #9, ¶ 27, 29, 33, 35).

5

obligations and fiduciary laws. This not a tenable approach. The Court will, therefore, look to each decision separately.

### A. Plan Amendments

The fiduciary duties discussed by the Plaintiff throughout most of her Complaint and briefing apply to the ratification of the Plan Amendments. There are no factual allegations in the Complaint that would support a cause of action for breach of fiduciary duty or fraud in connection with that ratification under Delaware law.[5] At the time of her vote on the amendments, Ms. Kober was a disinterested director, with equal power on the board. She has acknowledged in her Complaint that she had full knowledge of the content and purpose of the Plan Amendments, as well as the personal benefit they would provide to Mr. Harrington, before she voted. She was aware that without amendment, the plans would permit distributions only upon termination of employment or board service, and only in the form of company stock. (ECF #9, 15; ECF #14, p. 3). She was also aware that the amendments were meant to permit early distributions from the plans to facilitate Mr. Harrington's divorce settlement payments. (ECF #9, ¶22; ECF #14, p. 3). Finally, she was aware that Mr. Harrington needed cash from the company. (ECF #9, ¶ 22).

The amendments approved by Ms. Kober allowed for early distribution, but did not allow for those distributions to be made in cash. (ECF #9, ¶27; ECF #14, p. 3). Therefore Mr. Harrington's desire or intent to make cash distributions in violation of the plan were not material to that transaction because the adoption of the amendments did not make this possible.[6] In other words, because the amendments did not permit, and according to the Complaint, actually

---

[5] The parties agree that Delaware law applies in this case. "Ohio applies the internal affairs doctrine" which provides that "the law of the state of incorporation governs the internal affairs of a corporation." *Heine v. Streamline Foods, Inc.*, 805 F.Supp.2d 383, 389 (N.D. Ohio 2011)(quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)).

[6] According to the Complaint, Mr. Harrington could not have used the plans for cash disbursements to his ex-wife without violating ERISA. As set forth in footnote 2 above, Ms. Kober has made no ERISA claim in this action, and is pre-empted by ERISA from recovering for any plan violations under the common law.

6

prohibited Mr. Harrington from issuing cash distributions, his intent to issue cash disbursements, would not reasonably be regarded as significant or germane to the transaction at issue. *See, In re MONY Grp., Inc. S'holder Litig.* 853 A.2d 661, 682 (Del. Ch. 2004)(Disclosures relating to subjective opinion or belief of Board members are not per se material as long as the relevant material facts about the transaction are disclosed). Further, this information is not significantly different from the information admittedly known by Ms. Kober, which was that the amendments were meant to help him fund his divorce, for which he needed cash. *In re CheckFree Corp. Shareholders Litig.*, 2007 WL 3262188, at *2 (Del. Ch. Nov. 1, 2007)("to be material, [information] must significantly alter the total mix of information made available). There is no question that Mr. Harrington disclosed that amendments were intended to permit early distribution, and that they would benefit him. Ms. Kober knew that Mr. Harrington was the only person who would benefit because she was unmarried and was the only other plan participant. (ECF #18, fn. 2).

Furthermore, "there is "no fiduciary duty to disclose matters that are already known to the company." *Summit Investors II, L.P. v. Sechrist Industries, Inc.*, No. CIV. A. 19400, 2002 WL 31260989 (Del. Ch. Spet. 20, 2002). Ms. Kober knew or should have known that Mr. Harrington had the discretion to end the tax distributions, and so long as she knew he had this power, he was under no obligation to inform her that he intended to exercise this discretion at some point in the future. *Id.* Ms. Kober, as a disinterested board member with full knowledge of Mr. Harrington's interest in the amendment, and his ability, if not intention, to discontinue tax distributions, authorized the amendments in good faith,[7] thereby triggering the safe harbor for interested transactions and voiding any exception to the business judgment rule, including

---

[7] There is no allegation in the Complaint that Ms. Kober's authorization of the amendment was given in anything other than good faith. Further, if Ms. Kober did not authorize the amendments in good faith she would be barred from recovery for anything stemming from that decision by the doctrine of unclean hands. *In re Shawe & Elting LLC*, 2015 WL 4874733, at *36 (Del. Ch. Aug. 13, 2015)(defense of unclean hands applies to fiduciary duty claims); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 784 (6th Cir. 2015)(unclean hands can be a grounds for dismissal if the facts supporting it are clear on the face of the Complaint).

application of the "entire fairness" standard. See, 8 Del.C. §144; *Behinana of Tokyo, Inc. v. Behnihana, Inc.,* 906 A.2d 114, 120 (Del. 2006).

Even if the adoption of the amendments had been improperly obtained, Ms. Kober's injuries were not caused by that decision. Although the Complaint alleges that the implementation of the Plan Amendments and the Defendant's decision to issue plan distributions to his ex-wife in cash rather than in stock were improper, there is no allegation that Ms. Kober suffered any monetary damages based solely on these events.[8] Even with the Plan Amendments in place, and even with Mr. Harrington's decision to pay his ex-wife from the deferred payment plans in cash rather than in stock, there is no claim that Ms. Kober would have suffered any harm if the tax distributions had been issued in 2016 and 2017. Ms. Kober has made clear in the combination of her Complaint, her briefing, and discussions at status conferences related to the Defendant's Motion to Dismiss, that she is seeking redress for injury allegedly caused her by Mr. Harrington's decision not to provide tax distributions to cover her tax amounts in 2016 and 2017.[9] (ECF #9, ¶ 1, 24, 36, 41, 43). Yet, the transaction that she continuously claims required more disclosures under fiduciary principles was the approval of the Plan Amendments, which did not authorize or otherwise affect the company's ability to eliminate tax distributions. There is no allegation that this decision, standing on its own, caused Ms. Kober any damages or was detrimental to her in any way.

---

[8] Plaintiff also seeks Declaratory Judgment invalidating the Amendment to the Deferred Compensation Plan, and prohibiting the transfer of restricted HTV stock to Sherri Herrington, the Defendant's ex-wife. The First Amended Complaint states that subsequent to the filing of the original Complaint, but prior to the filing of the First Amended Complaint, Ms. Kober was no longer a stockholder or director of HTV. The Complaint alleges no other current connection between Ms. Kober and HTV. As she is no longer connected with HTV, she no longer has any possibility of present or future harm based on the implementation of the Amendment or the transfer of restricted stock. Therefore, as she has not alleged or demonstrated actual present harm or a significant possibility of future harm, she cannot satisfy the standing requirements for a declaratory action, and this Court has no subject matter jurisdiction to consider that relief. *See, Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006).

[9] Ms. Kober rid herself of stock in HTV, and ended her directorship on or about December 27, 2017. (ECF #9, ¶ 4). There is no allegation in the Complaint that she was terminated, unjustly removed from her position as director, prevented from liquidating her stock, or that she received an unfair price for her stock when she chose to cash it in. She is not bringing a derivative suit, nor is she bringing an ERISA claim for alleged violations of the plan documents.

B. Cash Distributions

The Complaint, itself, states that the Amendment approved by Ms. Kober did not allow for cash distributions. (ECF #9, ¶ 27). It further alleges that the cash distributions violated the terms of the Plans and, therefore, violated ERISA. (ECF #9, ¶ 27). Although she makes no actual claim under ERISA, to the extent that the Complaint alleges that Ms. Kober was injured by these cash distributions or any violation of the ERISA plans, her state law claims for breach of fiduciary duty and fraud are pre-empted by ERISA. ERISA explicitly preempts state law "insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law relates to an employee benefit plan when it alleges an ERISA plan violation. *See, Kendrick v. CNA Car Ins. Co.,* 71 F.Supp. 2d 815; *Crabbs v. Copperweld Tubing Prod. Co.,* 114 F.3d 85 (6th Cir. 1997); *Kentucky Laborers Dist. Council Health and Welfare Fund v. Hope,* 861 F.2d 1003 (6th Cir. 1988). Ms. Kober clearly and unambiguously asserts that the cash distributions to Sherri Harrington violated the ERISA plan, therefore, her state law claims arising from this allegation are preempted. (ECF #9, ¶ 27, 28).

C. Elimination of Tax Distributions

The Complaint alleges that since 2001, when HTV became an S-Corp status company, HTV has foregone distribution of profits to keep funds in the company to support further growth. It has also been HTV's practice to make quarterly distributions to stockholders to cover their tax payments on the undistributed profit, or "phantom income." (ECF #9, ¶ 30). At all times since 2001, the decision to provide tax distributions has been made "at a management level, at the

9

direction of [Mr.] Harrington,"[10] without solicitation of any board review or approval. (ECF #9, ¶ 31).[11]

In 2016 and 2017, HTV notified all stockholders that no tax distributions would be made, and that overpayments in 2015 would cover these taxes. (ECF #9, ¶ 33). Mr. Harrington also personally told Ms. Kober that she would not need the tax distributions to cover her taxes. (ECF #9, ¶ 34). This turned out to be untrue for Ms. Kober. Unlike other stockholders, Ms. Kober, as a non-employee stockholder, was not entitled to count her 2015 losses against her 2016 and 2017 taxes. (ECF #9, ¶ 25, 33, 34). She was the only non-employee minority stockholder, other than Mr. Harrington's children and former wife. (ECF #9, ¶ 2).

Ms. Kober claims that Mr. Harrington was legally required to inform her, prior to her vote on the Plan Amendments in 2015 that he planned to end the tax distributions in 2016 and 2017. She provides no legal basis for this assertion, however. As discussed above, according to the Complaint, whether or not she had approved the Plan Amendments in 2015, Mr. Harrington had the ability to direct the company's managers to approve or disapprove tax distributions without board review or approval.[12] Nothing in the Complaint alleges that the decision was detrimental to the company, or in any way devalued HTV's stock. Further, nothing in the Complaint would indicate Ms. Kober's decision to approve the Plan Amendments directly affected Mr. Harrington's decision to direct the discontinuation of tax distributions.[13]

---

[10] The Complaint does not say that Mr. Harrington was the only decision maker, or that his "direction" to make this managerial decision was given in his role as a director of the company. It alleges only that he "directed" the decision, and that he "understood and intended" for the distributions to end. (ECF #9, ¶ 31, 35). It makes clear that the decision was made "at a management level" but is inconsistent in its implications of board involvement. In paragraph 31, the Complaint states that the decision was made "without any board action being solicited or obtained," but in paragraph 33 indicates that the decisions were "consistently ratified by the Board of Directors." The overall implication in the Complaint is that Mr. Harrington was responsible for making this decision, but not in his role as a Director of the company.
[11] If the decision had required Board approval, as argued by the Defendant, and as inferred by Delaware law (8 Del. C. § 170), Ms. Kober, as one of only two Board members, would have had veto power over the decision.
[12] Plaintiff does not contest Defendant's assertion that HTV had, pursuant to 8 Del. C. § 170, complete discretion to issue, or not issue, tax distributions whether or not the plan amendments went into effect.
[13] The Complaint asserts that this decision was made due to business losses realized in the prior year(s). The Complaint also alleges that those business losses were the result of Mr. Harrington's cash distributions to his wife.

There is no allegation that Ms. Kober had any power, as a director or shareholder, to influence, determine, or alter any managerial decision related to the issuance of tax distributions, regardless of her knowledge about HTV's future intent to eliminate those distributions. A duty of disclosure applies between board members and shareholders, when the board is seeking shareholder action. *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992). "In the absence of a request for stockholder actions, the Delaware General Corporation Law does not require directors to provide shareholders with information concerning the finances or affairs of the corporation." *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998). There is no allegation that Harrington, in his role as director or otherwise, was seeking any action from shareholders, the board, or any other entity to whom a duty of disclosure was owed, when he took action to eliminate tax distributions. Therefore, Mr. Harrington had no duty to provide information about the tax distribution to Ms. Kober in her capacity as a shareholder or a director prior to executing the decision. As Ms. Kober is not alleged to have had a vote, or other input on the matter, she was owed no duty of disclosure. Absent a duty of disclosure, there can be no relief for the alleged breach of fiduciary duty or for fraud by concealment claims. *See, Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015)(fraud by concealment requires an affirmative obligation to speak arising from fiduciary duty or other special circumstances).[14]

The Complaint does not allege that HTV had any legal obligation to continue providing the tax distributions in perpetuity, or to issue such distributions in any particular year. There is

---

According to the Complaint, the Plan Amendments did not authorize cash distributions, therefore, the Plan Amendments were not plausibly a cause of the decision.

[14] To the extent that the factual allegations in the Complaint may imply a cause of action for affirmative fraud not articulated in the causes of action, those claims would fail for lack of specificity in pleading, and for lack of reasonable reliance. Plaintiff's allegation that Mr. Harrington made "implied and express promises" to continue to pay quarterly tax distributions," (ECF #9, 32), and "misrepresented the purpose of [certain] sales and liquidations," (ECF #9, ¶ 18), do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b). In addition, the alleged misrepresentations relating to the discontinuation of the tax distributions came after her vote on the amendments, and after the decision on the distributions, making it impossible to show reasonable reliance. Further, it is unreasonable for a sophisticated, corporate attorney and director, to rely on a statement by a director that she "would not need distributions in 2016 to cover her taxes." (ECF #9, ¶ 34). There is no indication in the Complaint that Mr. Harrington had any knowledge of Ms. Kober's tax situation or any special training in tax law or relationship to her prior tax filings.

no allegation that the corporate documents required a distribution, or that there was any contractual obligation to provide one. Nor is there an allegation that HTV achieved a profit in the years 2015-2017 that would have resulted in the possibility of profit distributions or the need for tax distributions.[15] Also absent is any allegation that the decision to eliminate tax distributions in 2016 and 2017 failed to serve a legitimate or rational business purpose,[16] that it was withheld oppressively or fraudulently,[17] that it did not apply to all shareholders, that it negatively impacted all or most of the minority shareholders,[18] or that Mr. Harrington benefitted in a way that did not apply to other similarly situated (i.e. non-passive) stockholders.[19] Accordingly, Ms. Kober does not argue that this transaction, standing alone, triggered any exceptions to the business judgment rule.

The allegation that this decision negatively affected Ms. Kober does not create a cause of action. Corporate directors owe no duty toward individual shareholders, only to the company and the stockholders as a whole. *See, e.g., Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028,

---

[15] Ms. Kober alleges that the tax distributions were provided in lieu of profit distributions so that the profits could be used to continue growing the business.

[16] Even if the Court applied the "entire fairness" standard to this transaction, the facts alleged in the Complaint show that this standard would be met. Under *Nixon v. Blackwell*, 626 A.2d 1366 (Del. 1993), a liquidity disparity, analogous to the cash flow disparity caused by the elimination of the tax distributions in this case, does not violate the "entire fairness" of the transaction simply because they do not receive equal benefit from a transaction, so long as there is no allegation of minority stock value oppression. No such allegation has been made in this case.

[17] Although there are allegations of fraud in the Complaint, they do not allege that the decision to eliminate tax distributions was made fraudulently or for oppressive reasons. "Courts act to compel the declaration of a dividend only upon demonstration that the withholding of it is explicable only on the theory of an oppressive or fraudulent abuse of discretion." *Gabelli & Co. Liggett Grp. Inc.*, 479 A.2d 276, 280 (Del. 1984).

[18] The parties have not identified nor is the Court aware of any duty owed by Mr. Harrington, to take Ms. Kober's specific individual tax implications into account when determining whether tax distributions would be issued, or to prioritize her personal circumstances and consequences when determining how the action would affect minority stockholders in general. Ms. Kober's claim of injury is based on her alleged unique inability to use passive losses resulting from the 2015 cash disbursements from the deferred payment plans to offset her 2016 and 2017 tax liabilities, thereby retaining her personal need for tax distributions in those years.

[19] A majority shareholder is not treated as an interested party in a transaction if they will benefit in the same way as other similarly situated stockholders, even if they may benefit more than minority shareholders. *See, Nemee v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010); *In re Synthes, Inc. S'holder Litig.*, 50 A.23d 1022, 1040-41 (Del. Ch. 2012).

at *11 (Del. Ch. Nov. 7, 2013); *Gilbert v. El Paso Co.*, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 (Del. 1990); *Kling Meats, Inc. v. Baltimore Spice Co.*, 1988 WL 15403, at *4 (Del. Super. Ct. Jan. 26 1988). Controlling stockholders owe the same duties to minority shareholders as they do to all shareholders generally. *Blaustein v. Lord Baltimore Capital Corp.*, NO. 6685-VCN, 2013 WL 1810956, *17 (Del. Ch. April 30, 2013), aff'd, 84 A.3d 954 (Del. 2014). Further, any duty of loyalty owed by people acting in a managerial role extends to the company itself, and not to any individual shareholder. In short, Plaintiff has identified no duty legally owed by Mr. Harrington in relation to his decision to decline to issue tax distributions in 2016 and 2017 that was breached in this case.

## CONCLUSION

Although Ms. Kober contends that her damages were caused directly by HTV's discontinuation of the tax distributions, she provides no basis upon which the Court could rule that this discontinuation violated the law, or otherwise infringed upon her rights as a minority shareholder or director. Any claims stemming from her allegation the Mr. Harrington violated the Plans by providing cash distributions to Sherri Harrington are preempted by ERISA. Further, her claims of breach of fiduciary duty and fraud in connection with the adoption of the Plan Amendments fail to plead facts sufficient to show that her vote was not fully informed, or that the adoption of the amendments was a legal cause of her injury. For these reasons, Defendant's Motion to Dismiss (ECF #12) is, hereby, GRANTED. IT IS SO ORDERED.

*[signature]*
Donald C. Nugent
United States District Judge

Date: July 2, 2018